Filed 5/31/24  P. v. Bedford CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B327789 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA451647) |
| v. | |
| WELDON RASHAWN BEDFORD, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, H. Clay Jacke II, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

In 2015 appellant Weldon Rashawn Bedford drove his truck, with admitted gang member Andrew Campbell as a passenger, into rival gang territory. After appellant stopped on West 68th Street, Campbell got out of the truck, and then shot and killed victim Cedric Horne. A jury found appellant guilty of second degree murder, with true findings that a principal used a gun and that the shooting was committed for the benefit of a gang.

In 2022, appellant filed a petition for resentencing under former Penal Code section 1170.95.[1] The superior court summarily denied appellant's petition, finding that appellant was not entitled to relief as a matter of law because the jury was not instructed on felony murder or the natural and probable consequences doctrine. On appeal, appellant contends he was entitled to a prima facie hearing and that the jury instructions given at trial allowed for the possibility that he was convicted of murder under another theory of imputed malice. Respondent Attorney General concedes that summary denial was in error, but argues it was harmless because the record of conviction establishes appellant's ineligibility for resentencing as a matter of law. We agree that any error was harmless. The jury was not instructed on either natural and probable consequences or felony murder. Moreover, the jury instructions as a whole required the jury to find that appellant personally harbored malice in order to

---

[1] All undesignated statutory references are to the Penal Code. Effective June 30, 2022, the Legislature renumbered section 1170.95 to section 1172.6. (Stats. 2022, ch. 58, § 10.) There were no substantive changes to the statute. All further references to the statute will be to the new section number.

convict appellant of second degree murder as an aider and abettor. We therefore affirm.

## FACTUAL BACKGROUND

We draw the following facts from the reporter's transcript of appellant's trial. We granted respondent's request for judicial notice of the record in the direct appeal, including the trial transcripts and jury instructions.

In the late afternoon of October 30, 2015, Cedric Horne was working as a landscaper on West 68th Street. This location was in territory claimed by the 65 Menlo Gangster Crips. At some point after he finished his work, Horne was standing near the corner of Vermont Avenue and West 68th Street when he was shot seven times with a nine-millimeter handgun. Two of the shots proved fatal.

A gang expert testified at trial regarding an alliance between two gangs, the 67 Neighborhood Crips and the 65 Menlo Gangster Crips, and their feud with a third gang, the Avalons. Appellant admitted to police several times that he was a member of the Avalons gang. He was aware of several gang-related killings in the month prior to Horne's shooting. In one incident, the Menlos held a funeral in the Avalons' territory and a shootout broke out between the gangs, resulting in the death of a Menlos member. Shortly after that incident, two Avalons gang members were killed. The prosecution's theory at trial was that appellant planned the shooting as retaliation for the earlier Avalons shootings, scouted the location, and as a senior gang member, accompanied the younger shooter (Campbell) to validate the killing on behalf of the gang.

One month after Horne's murder, the Los Angeles Police Department stopped appellant's Chevrolet Avalanche truck.

Appellant was with two admitted Avalons gang members at the time. Police searched the truck and found a kit for cleaning the barrel of a nine-millimeter gun.

After appellant was arrested, he eventually admitted that he was driving his Avalanche truck when it was used in the shooting, but asserted he had no idea the shooter—whom he identified as Campbell—was going to shoot Horne. Appellant told police that he, Campbell and two friends were headed to a marijuana dispensary on Florence Avenue, slightly west of Vermont. He was taking side streets to avoid the traffic on Florence when Campbell suddenly told him to stop the truck. Appellant did so. Campbell exited, shot Horne, and got back in the truck; appellant then sped off. Appellant claimed he did not know Campbell was carrying a gun.

Surveillance camera video from the streets surrounding the crime scene established that appellant's black Avalanche truck traveled south on Menlo Avenue, and turned right (west) on West 68th, toward Vermont. It then turned right (north) on Vermont and parked just north of West 68th. Appellant exited from the driver's seat and walked toward the rear of the vehicle. A police witness testified that from this location, appellant would have had a clear and direct view to where Horne was shot. A minute later, appellant re-entered the Avalanche. The vehicle proceeded north on Vermont, then drove around the block. As it traveled south on Menlo for a second time, it stopped and someone got out of the rear passenger door. The person walked toward the cargo bays in the back of the truck and then got back into the truck.[2]

---

[2] The prosecution argued at trial that this individual was Campbell, who retrieved a gun from the truck's cargo bay in preparation for the shooting.

4

The truck again made a right turn onto West 68th. After the shooting, the truck turned right onto Vermont Avenue from West 68th, and then right again onto West 66th, driving at a high speed.[3]

## PROCEDURAL HISTORY

### I. Charges and Conviction

An information filed August 10, 2017 charged appellant with the murder (§ 187, subd. (a)) of Horne. The information further alleged that a principal personally and intentionally discharged a firearm, a handgun, causing great bodily injury and death to Horne (§ 12022.53, subds. (b), (c), (d), and (e)(1)), and that the offense was committed for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further, and assist in criminal conduct by gang members (§ 186.22, subd. (b)(1)(C)). It also alleged that appellant suffered two prior serious felony convictions (§§ 667, subds. (a)(1) and (d), 1170.12, subd. (b)).

At appellant's trial, the jury was instructed on first and second degree murder, express and implied malice, and aiding and abetting. The jury was not instructed on felony murder or the natural and probable consequences doctrine.

On November 14, 2018, the jury found appellant guilty of second degree murder and found true the firearm and gang enhancement allegations. Appellant subsequently admitted his prior conviction for assault with a deadly weapon. The court sentenced appellant to a term of 60 years to life: 15 years to life

---

[3] There was testimony at trial that a person heading to a marijuana dispensary on Florence Avenue, as appellant claimed, would have turned left onto Vermont from West 68th, instead of turning right.

for the murder conviction, doubled to 30 years under section 1170.12, subdivision (c)(1), for the previous strike, another 25 years to life for the section 12022.53 enhancement, and plus five years for the section 667, subdivision (a)(1), enhancement. A different panel of this division affirmed appellant's conviction on direct appeal, holding that substantial evidence supported the finding that appellant knew Campbell intended to shoot Horne. (*People v. Bedford* (July 9, 2020, B295327) [nonpub. opn.] (*Bedford I*).) The court remanded the matter to the trial court for its consideration of several sentencing issues. On remand, the trial court struck the prior strike conviction, reducing appellant's total sentence to 45 years to life.

## II. Section 1172.6 Proceedings

Appellant filed a section 1172.6 petition on April 5, 2022. The superior court appointed counsel for appellant and ordered the prosecution to file a response.

In its opposition to the petition, the prosecution argued that appellant was ineligible for resentencing because his jury was not instructed on either the felony murder rule or the natural and probable consequences doctrine. Without any citation to the record, the prosecution asserted that the "factual record cited by the Court of Appeal" in its prior opinion established that appellant acted as a direct aider and abettor to the murder with malice aforethought. The prosecution attached a copy of the opinion in *Bedford I* to the opposition, but did not attach trial transcripts or other records from the trial. Appellant, through counsel, filed a reply, submitting on the prosecution's response to the petition.

The court summarily denied appellant's petition on December 14, 2022, finding that appellant was not prosecuted

6

under the theories of felony murder or natural and probable consequences and that he was "a direct aider and abettor who acted with malice aforethought." Accordingly, the court found that appellant was ineligible for resentencing as a matter of law.

Appellant timely appealed.

## DISCUSSION

### I. Governing Principles

Senate Bill No. 1437 (2017-2018 Reg. Sess.), which became effective January 1, 2019, "amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*), quoting Stats. 2018, ch. 1015, § 1(f).) Under this new framework, a person's culpability for murder must be premised upon his or her own actions and subjective mens rea. (*Ibid.*) Outside the felony murder context, a person must act with malice aforethought to be convicted of murder; "'[m]alice shall not be imputed to a person based solely on his or her participation in a crime.'" (*Id.* at p. 449, quoting § 188, subd. (a)(3).)

A person may still be convicted of murder as an aider and abettor. (*People v. Reyes* (2023) 14 Cal.5th 981, 990.) Indeed, "'an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life,'" thus acting with implied malice. (*Ibid.*, quoting *People v. Gentile* (2020) 10 Cal.5th 830, 850.) To be liable for an implied malice murder, a

7

direct aider and abettor must aid the commission of the life-endangering act, with the knowledge that the perpetrator intended to commit the act, the knowledge that the act is dangerous to human life, the intent to aid in its commission, and with conscious disregard for human life. (*Id*. at p. 991.)

An individual convicted of murder under a now-invalid theory may petition the superior court under section 1172.6 to vacate his or her conviction and resentence the petitioner on any remaining counts. (§ 1172.6, subd. (a).) Section 1172.6, subdivision (c) requires the court to appoint counsel when requested upon the filing of a properly pleaded petition for resentencing. (*People v. Lewis* (2021) 11 Cal.5th 952, 963, 966.) The court must allow further briefing by the parties and must then "hold a hearing to determine whether the petitioner has made a prima facie case for relief." (§ 1172.6, subd. (c).) The court may consider the record of conviction in determining whether the petitioner has made a prima facie case for relief under section 1170.95. Although the court should not engage in factfinding at the prima facie stage, "'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Lewis, supra*, 11 Cal.5th at p. 971.)

If the petition states a prima facie claim for relief, the superior court must issue an order to show cause and hold an evidentiary hearing. At the evidentiary hearing, the prosecution has the burden to prove, beyond a reasonable doubt, that the petitioner is guilty of murder under current law. (§ 1172.6, subds. (d)(1), (d)(3).) If the prosecution fails to meet this burden,

8

the trial court must grant the petition and vacate the murder conviction. (§ 1172.6., subd. (d)(3).)

We review de novo whether the trial court properly denied appellant's section 1172.6 petition without issuing an order to show cause. (*People v. Coley* (2022) 77 Cal.App.5th 539, 545; *People v. Harrison* (2021) 73 Cal.App.5th 429, 437 [whether court conducted a proper inquiry about whether a prima facie case for relief had been established under section 1172.6 is reviewed de novo].)

## II.   Analysis

### A.   *Summary denial was error*

Appellant contends the superior court erred in summarily denying his petition without a hearing and in apparently relying only on this court's prior opinion as the basis for its denial. The Attorney General concedes that the failure to hold a hearing, as required by section 1172.6, subdivision (c), was error. Respondent argues, however, that "[n]othing in the court's ruling showed that it relied on this Court's opinion in *Bedford I*."

We agree that the court erred in denying appellant's petition without holding a hearing. Additionally, while the superior court did not expressly rely on the prior appellate opinion, neither party supplied the court with the jury instructions given at appellant's trial, verdict forms, or any other part of the record of conviction, and neither party requested judicial notice of those documents. As such, it is unclear what the superior court relied upon in denying the petition, other than this court's prior opinion. Assuming that the court relied on the factual background in *Bedford I,* this was error. (See § 1172.6, subd. (d)(3) [admissible portion of a prior appellate opinion is

9

limited to "the procedural history of the case"]; *People v. Flores* (2022) 76 Cal.App.5th 974, 988, fn. 9 (*Flores*).)

These errors are subject to harmless error analysis under *People v. Watson* (1956) 46 Cal.2d 818, 836. (*Lewis, supra*, 11 Cal.5th at pp. 957–958 [failure to appoint counsel under § 1172.6, subd. (b)(3) is "state law error only, tested for prejudice under [*Watson*]"], 974; *Flores, supra,* 76 Cal.App.5th at p. 986.) Thus, the error requires reversal in this case only if appellant can show a reasonable probability that, absent the error, his petition would not have been summarily denied. ( *Flores, supra,* 76 Cal.App.5th at p. 986; see also *Lewis*, *supra*, 11 Cal.5th at pp. 972–974; *People v. Daniel* (2020) 57 Cal.App.5th 666, 676.) The error is harmless if the record of conviction, which includes the jury instructions and verdict, refutes appellant's prima facie showing and establishes as a matter of law that he is not entitled to relief. (See *Lewis, supra*, at pp. 971-974; *People v. Harden* (2022) 81 Cal.App.5th 45, 47-48; *People v. Daniel, supra,* 57 Cal.App.5th at p. 676 ["'[J]ury instructions given at a petitioner's trial may provide "readily ascertainable facts from the record" that refute [a petitioner's prima facie showing]' permitting a trial court to determine that a petitioner is not entitled to relief"].) The Attorney General contends that the errors here were harmless, because the record of conviction established appellant's ineligibility as a matter of law. We now turn to an assessment of that claim.

### B. *The error was harmless*

Appellant acknowledges that the jury was not instructed on the felony murder rule or the natural and probable consequences doctrine in this case. Nevertheless, he contends that the jury instructions on aiding and abetting and second degree murder

10

created an ambiguity that could have allowed the jury to find him guilty of murder by imputing the shooter's malice to him, rather than by finding appellant personally harbored the requisite mental state. We disagree.

The only theories on which appellant's jury was instructed were first or second degree murder, either as a direct perpetrator or as an aider and abettor. These theories remain valid and do not qualify for section 1172.6 relief. (See *Reyes, supra*, 14 Cal.5th at p. 990.) Specifically, the trial court gave CALCRIM No. 400, which instructs that appellant could be convicted as either a direct perpetrator or an aider and abettor. The court further instructed on aiding and abetting liability with CALCRIM No. 401, requiring proof that "1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. [¶] Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."

The court also instructed the jury on malice with CALCRIM No. 520. As given, the instruction provided, "To prove that a defendant is guilty of this crime [murder], the People must prove that: [¶] 1. The defendant committed an act that caused the death of another person; [¶] AND [¶] 2. When the defendant acted, he had a state of mind called malice aforethought. [¶] There are two kinds of malice aforethought, express malice and implied malice. Proof of either is sufficient to establish the state

11

of mind required for murder.  [¶] The defendant acted with express malice if he unlawfully intended to kill. [¶] The defendant acted with implied malice if: [¶] 1. He intentionally committed an act; [¶] 2. The natural and probable consequences of the act were dangerous to human life; [¶] 3. At the time he acted, he knew his act was dangerous to human life; [¶] AND [¶] 4.  He deliberately acted with conscious disregard for human life."

Appellant contends that if the jury convicted him based on a finding of implied malice, the combination of these instructions left open the possibility that he was convicted based on his participation in the crime and the imputed malice of the shooter, rather than finding that he personally harbored the required intent.  Appellant relies for this contention on *People v. Powell* (2021) 63 Cal.App.5th 689 (*Powell*) and *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*).

In *Powell*, on direct appeal, the court found that the standard aiding and abetting instruction, CALCRIM No. 401, is "not tailored for" aiding and abetting an implied malice murder. (*Powell, supra,* 63 Cal.App.5th at p. 714.)  Specifically, the instruction "couches direct aiding and abetting liability in terms of the aider and abettor knowing the perpetrator intended to commit the *crime*, the aider and abettor intending to aid and abet the perpetrator in committing the *crime*, and that, by words or conduct, the aider and abettor in fact aided the perpetrator's commission of the *crime*." (*Ibid.*)  But in the context of implied malice murder, the relevant intent is that the aider and abettor "intend[s] the commission of the perpetrator's *act* [that proximately causes death], the natural and probable consequences of which are dangerous to human life, intentionally aid[s] in the commission of that act and do[es] so with conscious

12

disregard for human life." (*Ibid*.) The court therefore concluded that the instructions were erroneous, although it ultimately found that the error was harmless. (*Ibid*.)

In *Langi*, the same issue arose in the context of a section 1172.6 resentencing petition. The defendant was part of a group who beat and robbed the victim. (*Langi, supra*, 73 Cal.App.5th at p. 975.) During the confrontation, the victim was killed when he fell and hit his head after he was punched by someone in the group. (*Ibid*.) Langi contended that he did not throw the fatal punch. The jury convicted him of robbery, battery, and second degree murder. (*Id*. at p. 977.)

The superior court summarily denied Langi's resentencing petition, concluding that the jury had found him guilty as the actual killer. (*Langi, supra*, 73 Cal.App.5th at p. 977.) On appeal, the court rejected that finding and assumed that the jury had convicted Langi as an aider and abettor. (*Id*. at p. 980.) The court then found that, although the jury had not been instructed on the natural and probable consequences doctrine, the standard instructions were ambiguous and permitted the jury to find Langi guilty on a theory under which malice was imputed to him based solely on his participation in the crime. (*Ibid*.) The court observed that while the aiding and abetting instruction stated that a person aids and abets a crime if the person acts with knowledge of the perpetrator's unlawful purpose and with the intent to commit or encourage that crime, "the second-degree-murder instruction specified that the direct perpetrator of that crime need not act with the unlawful intent of causing death." (*Ibid*.) The perpetrator's unlawful purpose did not need to be killing the victim, but could have been "only to strike or to injure, or conceivably only to embarrass, the victim." (*Ibid*.) Thus, the

13

court reasoned that "the aider and abettor's knowledge of that purpose similarly need not have been knowledge that the perpetrator aimed to kill." (*Id.* at p. 982.) Because the aiding and abetting instruction did not require the defendant to act with conscious disregard for human life, the court concluded that the jury could have convicted Langi as an aider and abettor simply for intending to aid the perpetrator's act, without personally acting with express or implied malice. (*Id.* at p. 983.)

We are not persuaded that the ambiguity identified in *Powell* and *Langi* is present in the context of this case. CALCRIM No. 401 required the aider and abettor to know that the perpetrator intended to commit the crime. The only crime charged here was murder, either first or second degree. By contrast, in *Langi*, the defendant was also charged with and found guilty of the crimes of robbery and battery. (*Langi, supra*, 73 Cal.App.5th at p. 976.) Thus, the ambiguity in the jury instructions in *Langi* allowed for the possibility that the defendant was convicted of aiding and abetting murder based on a finding that he intended to aid and abet a non-murder battery or other crime. But here, the only crime charged, murder, required one of two different intents: either intent to kill (express malice) or conscious disregard for human life (implied malice). We see no reasonable possibility that the jury could have found that appellant as an aider and abettor could know that the perpetrator intended to commit a specific crime and help the perpetrator commit that crime—here defined in CALCRIM No. 520 as requiring intent to kill or a conscious disregard for human life—and yet not personally harbor the requisite mens rea. As our Supreme Court said, where the only unlawful purpose charged is an unlawful killing, "one cannot knowingly and

14

intentionally help another commit an unlawful killing without acting with malice." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1123.)

We also reject appellant's contention that the prosecution's closing arguments at trial exacerbated any potential ambiguity. Appellant asserts that the prosecution's discussion of implied malice "purely relied on a theory of imputed malice, arguing only the shooter's mens rea." The record does not support appellant's contention. The prosecution asserted throughout closing arguments that appellant was liable as an aider and abettor who knew that Campbell was going to shoot Horne and intended to aid that act. The prosecutor told the jury that although appellant "did not pull the trigger," he was liable as an aider and abettor of the murder because he "knows that it's going to happen, [ ] intend[s] that it happen and [ ] help[s] bring it about." The prosecutor did not contend that the shooter's intent should be imputed to appellant; rather, his closing argument focused almost exclusively on appellant's knowledge and intent.

The jury instructions given here required the jury to find that appellant personally harbored express or implied malice either as the shooter or a direct aider and abettor. He accordingly is ineligible for relief under section 1172.6 as a matter of law, and any error in denying his petition without issuing an order to show cause was harmless.[4]

---

[4] We need not and do not reach respondent's alternative argument that appellant's claim of instructional error should have been asserted on direct appeal rather than in a petition for resentencing under section 1172.6, citing *People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921.

15

**DISPOSTION**

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


CURREY, P.J.


ZUKIN, J.

16